UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AEPA ARCHITECT ENGINEERS, P.C., <br><br> Plaintiff, <br><br> v. <br><br> ALI AZIZ, *et al.*, <br><br> Defendants. | Case No. 1:21-cv-01457 (TNM) |

**MEMORANDUM ORDER**

Defendants Ali Aziz, Bilal Aziz, and their company, Archi Design Associates, LLC (collectively, the Azizes), move to dismiss AEPA Architect Engineers, P.C.'s (AEPA) Complaint for damages stemming from various business disagreements. AEPA alleges it partnered with the Azizes on a project for the Egyptian Embassy and that during the project Alfred Liu, AEPA's owner, fell ill. Compl. ¶¶ 6, 18, ECF No. 2-1. AEPA contends that the Azizes exploited Liu's illness to steal business opportunities and assets from it. *Id.* ¶¶ 19–42. The Azizes moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) but filed no reply to AEPA's opposition. *See* Mem. of P. & A. in Supp. of Defs.' Mot. to Dismiss (Mot. to Dismiss), ECF No. 13-1. For the following reasons, the Court denies the Azizes' motion.

**I.**

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017) (cleaned up). A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts the

Complaint's factual allegations as true and grants the plaintiff "all inferences that can be derived from the facts alleged." *L. Xia v. Tillerson*, 865 F.3d 643, 649 (D.C. Cir. 2017) (cleaned up). The Court need not, however, credit "a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (cleaned up).

## II.

AEPA's Complaint brings six counts. *First*, AEPA maintains the Azizes usurped its business opportunities. *See* Compl. ¶¶ 43–50. When Liu fell sick, AEPA says the Azizes falsely told the Egyptian Embassy staff that their company was a subsidiary of AEPA—rather than a partner—and managed to persuade the staff to award a contract to them rather than AEPA. *Id.* ¶ 46. The Azizes respond that a corporate usurpation exists only when the defendants are officers, directors, or high-ranking employees of the victim company. *See* Mot. to Dismiss at 7–8.[1] For this proposition, the Azizes rely on *Yah Kai World Wide Enterprises, Inc. v. Napper*, 195 F. Supp. 3d 287, 325 (D.D.C. 2016). *See* Mot. to Dismiss at 7. Because AEPA did not allege that the Azizes fall into any of these categories, they argue the Court should dismiss this count.[2]

Several problems plague the Azizes' argument. To start, *Yah Kai* applied Maryland law, not D.C. law, so the case has limited relevance here. *See Yah Kai*, 195 F. Supp. 3d at 325. Next, *Yah Kai* does not say that a plaintiff "must" plead that a defendant is a corporate officer or

---

[1] All page numbers refer to the pagination generated by the Court's CM/ECF filing system.

[2] The Azizes question whether the tort of usurpation of corporate opportunity exists under D.C. law. *See* Mot. to Dismiss at 7. But the Court does not take the Azizes to be arguing that the tort does not exist. Thus, as the court did in *Jericho Baptist Church Ministries, Inc. (D.C.) v. Jericho Baptist Church Ministries, Inc. (Maryland)*, No. 16-CV-00647 (APM), 2020 WL 1703937 (D.D.C. Apr. 8, 2020), the Court for now assumes that it exists. *Id.* at *7 ("The tort [of usurpation of corporate opportunity] is not well developed in the District of Columbia . . . however, Defendants do not contest the availability of the tort in general, so the court will assume for present purposes that such a tort exists under District of Columbia law.").

2

director.  Instead, *Yah Kai* says that usurpation of corporate opportunity can occur where "corporate personnel—*i.e.,* individuals who have a *fiduciary duty of loyalty* to the corporation," steal the opportunity.  *Id.* (emphasis added).  And under D.C. law, "[t]he fiduciary nature of the partnership relation requires at all times the highest degree of good faith, and precludes any secret profit, benefit, or advantage of any kind."  *Marmac Invest. Co. v. Wolpe*, 759 A.2d 620, 626 (D.C. 2000) (cleaned up); *see also* D.C. Code § 29–604.07(b)(3) (2021) ("A partner's duty of loyalty to the partnership and the other partners include[s] . . . To refrain from competing with the partnership in the conduct of the partnership business before the dissolution of the partnership.").  Discovery may show that the agreement between the Azizes and AEPA was not a partnership.  But for now, the Court must credit AEPA's allegation that the parties had formed a partnership, and so it declines to dismiss this count.

*Second*, AEPA brings a count of fraudulent conversion.  Compl. ¶¶ 51–57.  AEPA claims that the Azizes converted over $75,000 by draining AEPA's bank account and, separately, diverting to themselves payments originally intended for AEPA.  *See id.* ¶ 52–56.  The Azizes respond that conversion requires AEPA to have had an "identifiable fund" over which it exercised "dominion or control."  Mot. to Dismiss at 10.  The Azizes rely on *McNamara v. Picken*, 950 F. Supp. 2d 193 (D.D.C. 2013), which states that "fungible cash is . . . the type of fund that may not underly a claim for conversion."  *Id.* at 195.  Instead, when two partners control a shared pot of money, a partner who believes his co-partner took money from that pot should bring a claim for breach of contract, not conversion.  *Id.* at 195–96.  Because Bilal Aziz was a joint signatory on AEPA's bank account, the Azizes contend that Liu did not exercise dominion and control over the account.  Mot. to Dismiss at 9.  And to the extent that AEPA claims that the Azizes diverted funds to themselves, the Azizes argue that the Complaint does not

allege Liu had dominion and control over these funds. *Id.* at 10. Thus, the Azizes contend that AEPA fails to state a conversion claim.

The Complaint contains insufficient detail to determine whether Liu possessed dominion or control over the bank account. The same is true of the allegedly diverted funds. AEPA claims that the Azizes were entitled to only net partnership proceeds and therefore all the diverted funds were under AEPA's dominion and control. *See* Mem. of P. & A. in Supp. of Pl.'s Resp. to Defs.' Mot. to Dismiss (Pl.'s Opp'n.) at 7, ECF No. 15. But the Complaint alleges only that certain percentages of net profits belonged to each party. *See* Compl. ¶ 10. It says nothing about whether the allegedly diverted funds were under Liu's dominion or control. The Court therefore finds that factual development is necessary to decide this disagreement.

*Third*, AEPA brings a claim for tortious interference with a business relationship. Compl. ¶¶ 58–66. This count resembles AEPA's usurpation of corporate opportunity claim. APEA argues that the Azizes represented themselves as a subsidiary or affiliate of AEPA and persuaded the Egyptian Embassy to award a follow-on project to them rather than to AEPA. *Id.* ¶¶ 60–61. The Azizes respond that AEPA can only bring this tort if it had a commercially reasonable expectation of acquiring the allegedly stolen business opportunity. *See* Mot. to Dismiss at 10–11. But, the Azizes contend, AEPA did not make this allegation in its Complaint. *See id.* at 11.

The Azizes are correct that AEPA does not claim it had a commercially reasonable expectation of winning follow-on work. But AEPA does allege it was engaged in a "lucrative business opportunity" with the Embassy. Compl. ¶ 65. More, AEPA points out that the Azizes allegedly won the follow-on work only by representing themselves as a subsidiary or affiliate of AEPA. *Id.* ¶ 60. One can reasonably infer that if representing themselves as part of AEPA

clinched the follow-on work for the Azizes, then AEPA itself had a reasonable expectation of winning the same work. *L. Xia*, 865 F.3d at 649 (cleaned up) (holding that the court must grant a plaintiff "all inferences that can be derived from the facts alleged"). Thus, the Court will deny the motion to dismiss this count.

*Fourth*, AEPA brings a claim for civil conspiracy/Racketeer Influenced and Corrupt Organizations Act (RICO) violations. Compl. ¶¶ 67–71. AEPA claims that the Azizes "collaborated and acted in concert to execute a scheme and pattern of deceit" directed at converting AEPA's business identities, technical skills, and licenses to conduct business in D.C. *Id.* ¶ 69. The Azizes respond that "the Complaint musters only a threadbare recital of the elements" and fails to allege that the Azizes collaborated among themselves. Mot. to Dismiss at 11.

True, AEPA's RICO claim is light on details. But as AEPA points out in its opposition, the Complaint, taken as a whole, alleges the necessary elements. *See* Pl.'s Opp'n at 9–12. To make out a RICO claim, "a plaintiff must allege a 'pattern of racketeering activity.' A 'pattern' requires at least two predicate acts." *Ambellu v. Re'ese Adbarat Debre Selam Kidist Mariam*, 387 F. Supp. 3d 71, 82 (D.D.C. 2019) (quoting *Salinas v. United States*, 522 U.S. 52, 62 (1997)). "'Racketeering activity' encompasses many nefarious acts, including mail and wire fraud." *Id.* The alleged predicate acts here are violations of the federal mail and wire fraud statutes, 18 U.S.C. §§ 1341, 1343. *See* Pl.'s Opp'n at 11. These statutes "reach any scheme to deprive another of money or property by means of false or fraudulent pretenses, representations, or promises." *Carpenter v. United States*, 484 U.S. 19, 27 (1987).

AEPA maintains the Azizes violated these statutes by, among other things, adding Ali Bilal to the partnership bank account and then draining it; redirecting payments bound for AEPA

5

to themselves; sending a demand letter for payment to the Embassy using AEPA letterhead; using the corporate debit card and issuing checks without authorization; and overbilling AEPA's clients while keeping the excess billings for themselves. Pl.'s Opp'n at 11–12. The Azizes neither rebutted these predicate acts in their motion to dismiss nor filed a reply to AEPA's opposition. Thus, the Court declines to dismiss the RICO count.[3]

*Fifth*, AEPA alleges breach of contract. Compl. ¶¶ 72–80. According to AEPA, the profit-sharing agreement between it and the Azizes allotted to AEPA 40% of net profits from all projects which involved both parties. *Id.* ¶ 75. The Azizes breached that contract, says AEPA, when it diverted payments from the Embassy contract. *Id.* ¶ 76. The Azizes reply that the Complaint "fails to articulate the nature of Defendants' breach." Mot. to Dismiss at 12. According to the Azizes, all the Complaint alleges is that "Defendants' actions deprived AEPA of its portion of the profits from the projects"—"a legal conclusion." *Id.* Not so. The Complaint alleges that the Azizes seized on Liu's poor health to divert all the payments from the Embassy contract, thus depriving AEPA of its 40% share. That is sufficient to make out a claim for breach of contract, so the Court will deny the Azizes' motion as to this count.

---

[3] When, as here, the predicate acts involve fraud, the fraudulent acts must be pleaded with particularity under Federal Rule of Civil Procedure 9(b). *See* F.R.C.P 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *see also Ambellu*, 387 F. Supp. 3d at 82 (applying Rule 9(b) to predicate acts in a RICO case). But the Azizes do not raise a Rule 9(b) defense here, so the Court does not consider it. Nor does the Court consider the requirement that a "pattern of racketeering activity" include continuity. *See id.* at 85 ("[A] pattern of racketeering activity requires . . . continuity. . . . To prove continuity, it must be shown that the predicates themselves amount to, or that they otherwise constitute a threat of, continuing racketeering activity.") (cleaned up). The Azizes are, presumably, unable to continue any alleged racketeering activity against AEPA now that AEPA suspects the Azizes of defrauding it. But the Azizes did not raise this argument, and the Court declines to consider it sua sponte.

*Sixth*, APEA brings a claim of breach of the covenant of good faith and fair dealing. *See* Compl. ¶¶ 81–88. "[A]ll contracts contain an implied duty of good faith and fair dealing," and a party may be liable for breach of this implied duty if it "evades the spirit of the contract, willfully renders imperfect performance, or interferes with performance by the other party." *Allworth v. Howard Univ.*, 890 A.2d 194, 201 (D.C. 2006) (cleaned up). AEPA alleges the Azizes "took advantage of the trust and good will between themselves and Mr. Liu" to "maliciously mislead AEPA clients, contractors, suppliers, and business associates into breaching their arrangements with AEPA." Compl. ¶¶ 85–86. In response, the Azizes raise the same argument here as they did in opposition to the breach of contract: "the Complaint fails to articulate the nature of the breach." Mot. to Dismiss at 12.

The Court disagrees. The Complaint alleges the Azizes acted with "malice and intentionality" to take "advantage of the fact that Mr. Liu suffered from a serious chronic medical condition." Compl. ¶¶ 83–84. This allegedly caused loss to AEPA. These allegations, if true, evade the spirit of the bargain and could constitute breach of the covenant of good faith and fair dealing. So the Court will not dismiss this count.

For the foregoing reasons, it is hereby

**ORDERED** that the Azizes' [13] Motion to Dismiss Plaintiff's Complaint is DENIED.

**SO ORDERED**.

Dated: January 4, 2022                                      TREVOR N. McFADDEN, U.S.D.J.